Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1079 | **DATE** | 11/19/2003 |
| **CASE TITLE** | Dudek vs. Midwest Engineering Pension Fund | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Status hearing held and continued to 12/10/03 at 9:00 a.m. For the reasons stated in the attached memorandum opinion and order, defendant's motion for summary judgment is denied, plaintiff's motion for partial summary judgment is denied [33-1]. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | 2 | | **Document Number** |
|---|---|---|---|---|---|---|
| | No notices required. | | | number of notices | | |
| x | Notices mailed by judge's staff. | | | NOV 20 2003 | | |
| | Notified counsel by telephone. | | | date docketed | | |
| | Docketing to mail notices. | | | AR | | |
| | Mail AO 450 form. | | | docketing deputy initials | | 44 |
| | Copy to judge/magistrate judge. | | | | | |
| MF | courtroom deputy's initials | U.S. DISTRICT COURT 03 NOV 20 AM 12:43 FILED—DOCKETING | date/time received in central Clerk's Office | date mailed notice MF mailing deputy initials | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WES DUDEK, | ) |
| Plaintiff, | ) No. 02 C 1079 |
| v. | ) Judge John W. Darrah |
| MIDWEST OPERATING ENGINEERS PENSION TRUST FUND, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Wes Dudek ("Dudek"), filed suit against Defendant, Midwest Operating Engineers Pension Trust Fund ("Midwest"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132 *et seq*. Presently before the Court are Dudek's Motion for Partial Summary Judgment and Midwest's Motion for Summary Judgment. At issue is the date from which Dudek is entitled to benefits under the Plan. Dudek contends he is entitled to benefits beginning September 6, 1985, when he became disabled. Midwest contends that Dudek is entitled to benefits beginning November 1, 1991, the first day of the month following Dudek's filing of an application for benefits.

## BACKGROUND

Midwest is an employee benefit plan (the "Plan") within the definition of Section 3(2) of ERISA. (Plaint.'s 56.1(a)(3) Statement ¶ 3). Dudek was a participant in the employee benefit plan within the definition of Section 3(7) of ERISA. (Id., ¶ 4).

In October 1991, Dudek applied for disability benefits with the Department of Health and Human Services Social Security Administration Office. (Def.'s 56.1(a)(3) Statement ¶ 16). By

opinion of an administrative law judge, the Department of Health and Human Services Social Security Office of Hearings and Appeals found that Dudek became disabled on September 6, 1985. (Plaint.' 56.1(a)(3) Statement ¶ 5).

In October 1991, Dudek inquired of Midwest as to whether he was entitled to receive Total and Permanent Disability Benefits under the Plan. (Def.'s 56.1(a)(3) Statement ¶ 12). On March 7, 1992, Dudek filed his application for Total and Permanent Disability Benefits with Midwest. (Id., ¶ 13). The Administrative Manager denied Dudek's application. (Id., at ¶ 14). On August 4, 1992, the Pension Fund Review Panel ("Review Panel") issued its decision affirming the Administrative Manager. The Review Panel denied Dudek's request for Total and Permanent Disability Benefits under the Plan on the grounds that he was not permanently disabled and that he did not have the required five years of service as required by the Plan. (Id., ¶ 15).

Dudek sought reconsideration of the denial of his benefits. On March 3, 1995, the Fund agreed that Dudek was entitled to receive a total and permanent disability benefit as of April 1, 1992. The March 3, 1995 letter from the Fund stated that Dudek's file would be reviewed to determine if he was entitled to monthly benefits prior to April 1, 1992. (Def.'s 56.1(a)(3) Statement ¶ 17). Based on its reconsideration of the denial of benefits, the Review Panel issued an opinion on July 14, 1995, in which the Plan found that Dudek was entitled to Total and Permanent Disability Benefits and that the effective date of the benefit would be November 1, 1999, consistent with Part II, Article XI, Section 4 of the Plan. (Id., ¶ 18). By letter dated April 18, 2001, the Plan's Pension Department Manager stated that the Decision on Reconsideration issued on July 14, 1995, by the Review Panel was "final, conclusive and binding on Wes Dudek and other persons." (Id., ¶ 19). Each of the

2

letters Dudek received from Midwest stated, in part, "The amount of your Annual Pension Supplement is based on your retirement date." (Id., ¶ 11).

Midwest paid Dudek monthly pension benefits totaling $19,186.17 ($138.03 per month from November 1, 1991 through May 31, 2003). (Plaint.'s Supp. 56.1(a)(3) Statement ¶ 11). Midwest paid Dudek an annual pension supplement of $600 for each of the years 1997 and 1998 based on a retirement date which corresponds with the first day of the month following the date Dudek filed his application for benefits (November 1, 1991). (Plaint.'s 56.1(a)(3) Statement ¶ 17). Midwest paid Dudek an annual pension supplement of $1,000 for each of the years 1999, 2000, and 2001 based on a retirement date which corresponds with the first day of the month following the date he filed his application of benefits. (Id., ¶ 18).

Part II, Article II, Section 1 of the Plan defines total and permanent disability as: "A physical or mental condition of an Employee which the Trustees find on the basis of medical evidence totally and permanently prevent such Employee from engaging in employment, within or without the geographical area covered by this Pension Plan, in work described in the 'Scope of Work' provisions contained in the Collective Bargaining Agreement entered into between the Union and the Employees." (Def.'s 56.1(a)(3) Statement ¶ 4).

Part II, Article VI, of the Plan states, in pertinent part:

> Section 1. An Employee who, while in "Covered Employment", shall suffer "Total and Permanent Disability" within the meaning of such term, as the same is defined in Article II of this Part II, shall be eligible to receive "Total and Permanent Disability Benefits", in accordance with the following:
>
> * * *
>
> Section 1A. An Employee who on and after January 24, 1985, shall suffer "Total and Permanent Disability" within the meaning of such term as the same defined in Article II of this Part II, who in the three

3

> twelve (12) month periods beginning April 1st and ending March 31st next succeeding, immediately preceding his disability has 900 hours of Employer Contributions" made on his behalf to the Trust Fund and who is actively seeking employment as an Operating Engineer with a Contributing Employer, shall be eligible to receive "Total and Permanent Disability Benefits", provided: (i) That such disability occurs prior to the time such Employee shall be eligible to receive other Retirement Benefits hereunder, and (ii) Such Employee shall have five (5) "Years of Service."

(Def.'s 56.1(a)(3) Statement ¶ 6).

Part II, Article XI, Section 4(a) of the Plan, provides, in part, that:

> Pension Benefits shall be payable commencing with the month following the month in which the Employee has fulfilled all the conditions for entitlement to benefits. Prior to 'Normal Retirement Age', the filing of an application with the Trustees is required for entitlement to benefits. The first day of such month is what is meant by the Effective Date of the Pension.

(Def.'s 56.1(a)(3) Statement ¶ 7).

Midwest actuaries determined the level of funding needed to provide disability and pension benefits under the Plan. (Def.'s Supp. 56.1(a)(3) Statement ¶ 2). Midwest's actuaries have determined the level of funding needed for disability pension based upon when the applicant files an application. If Part II, Article XI, Section 4(a), set out above, were interpreted to allow a participant to receive benefits retroactive before the date of the application, the calculated funding levels would not be sufficient to pay those benefits. Furthermore, without the proper funding of the disability benefits, the financial fund might be put in jeopardy. (Id., ¶ 4).

Part II, Article XI, Section 5 of the Plan provides, in part, "To be considered retired, an Employee must have separated from 'Covered Employment' and not be engaged in any 'Disqualifying Employment' as defined in Section 6." (Def.'s 56.1(a)(3) Statement ¶ 8).

4

Part IV, Article III, Section 5 of the Plan, states in part:

> All questions or controversies of whatever character arising in any manner or between any parties or persons in connection with the Plan or Trust Agreement or its operation, whether as to any claim for benefits, as to the construction of the language of the Plan or Trust Agreement or any rules and regulations adopted by the Trustees, or as to any writing, decision, instrument, or account in connection with the operating of the Plan or otherwise, shall be submitted to the Board of Trustees for Decision. In the event a claim for benefits has been denied, no lawsuit or other action against the Fund or its Trustees may be filed until the matter has been submitted for review under the ERISA-mandated review procedure set forth in Part IV, Article IV. The Decision on review shall be binding upon all persons dealing with the Plan or claiming any benefit hereunder, except to the extent that such Decision may be determined to be arbitrary and capricious by a Court or arbitrator having jurisdiction over such matter.

(Def.'s 56.1(a)(3) Statement ¶ 3).

Part II, Article VI, Section 3 of the Plan provides, in part, that "If the disability occurs on or after April 1, 1979, the 'Monthly Retirement Benefit' to which such Employee shall be entitled shall be the sum of $100 or an amount equal to seventy percent (70%) of his 'Accrued Benefit' as of the date he is eligible to receive 'Total and Permanent Disability Benefits', which amount shall be the greater sum, payable during the period of his disability." (Def.'s 56.1(a)(3) Statement ¶ 5).

## ANALYSIS

The denial of benefits challenged under Section 1132(a)(1)(B) is reviewed *de novo* unless the benefit plan gives the fiduciary or administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 103 (1989) (*Bruch*). If the plan confers power on the administrator to exercise discretion,

5

the Court's review is the deferential "arbitrary and capricious" one. *Bruch*, 489 U.S. at 111; *Reich v. Ladish Co.*, 306 F.3d 519, 524 (7th Cir. 2002).

The parties do not dispute that the Plan of the instant case expressly grants the Trustees discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Plan. Accordingly, the Trustees' decision will be reversed only if the decision was arbitrary and capricious.

Under this standard, the Court does not decide whether it would reach the same conclusion or rely on the same authority. *See Mers v. Marriott Inter'n Group Accidental Death & Dismemberment*, 144 F.3d 1014, 1021 (7th Cir. 1997) (*Mers*). The Court will not set aside the denial of benefits if the denial was based on a reasonable interpretation of the plan documents. The court's "role is to determine whether the decision was completely unreasonable." *Mers*, 144 F.3d at 1021. As long as the plan administrator makes an "informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts, *i.e.*, one that makes a 'rational connection' between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached," the decision of the administrator will be upheld. *See Exbom v. Central States, Southeast & Southwest Areas Health & Welfare Fund*, 900 F.2d 1138, 1143 (7th Cir. 1990).

The parties do not dispute that Dudek began receiving benefits under the Plan based on a finding that he was entitled to receive such benefits under the Total and Permanent Disability Benefits provisions of the Plan. The primary dispute between the parties is whether the Plan's decision that Dudek became eligible for benefits on November 1, 1991, was arbitrary and capricious. Dudek contends that the date of his disability is the date he became eligible for benefits – the date he became disabled. Midwest contends that the Plan's interpretation was correct.

Dudek's eligibility for total and permanent disability benefits was based on Section II, Article VI, Sections 1 and 1A of the Plan. By finding Dudek eligible to receive such benefits, the Plan found that Dudek met the requirements set forth in Section II, Article VI, Section 1A as quoted above. Originally the Plan agreed to start paying Dudek these benefits as of April 1, 1992, "based on the information provided" to the Plan. How the date of April 1, 1992, was determined is not included in the materials before the Court and is not addressed by the parties. The Plan also stated that it would review the file to determine if Dudek was entitled to monthly benefits prior to April 1, 1992. Subsequently, the Pension Review Panel found that Dudek was entitled to disability benefits payments "commencing November 1, 1991. The members of the Review Panel have selected November 1, 1991, because it is consistent with the Pension Plan provision that payments are to begin on the month following the initial application or inquiry." Based on the date of November 1, 1991, as the date of eligibility, the Plan paid Dudek certain amounts of benefits as set forth above.

The Plan based its decision that Dudek became eligible for benefits as of November 1, 1991, on Part II, Article XI, Section 4 of the Plan. Part II, Article XI is entitled "Applications, Benefit Payments, Retirement And Benefit Suspensions." Section 4 states, "Pension Benefits shall be payable commencing the month following the month in which the Employee has fulfilled all of the conditions for entitlement to benefits. Prior to 'Normal Retirement Age', the filing of an application with the Trustees is required for entitlement to benefits. The first day of such month is what is meant by the Effective Date of the Pension."

The Plan considered the application requirement in Part II, Article XI, Section 4 of the Plan as an eligibility requirement to receive disability benefits under the Plan, which was

7

November 1, 1991, the month following Dudek's application. Dudek contends this interpretation is incorrect because the application is necessary only to start payment of the benefits and that the eligibility for benefits must be measured from the time the grounds for eligibility, *i.e.*, retirement occurred..

Under similar facts, the Ninth Circuit found that, while an application was required to initiate payment of benefits, such procedural requirement did not prevent the loss of benefits retroactively. *See Canseco v. Construction Laborers Pension Trust for Southern Cal.*, 93 F.3d 600 (9th Cir. 1996) (*Canseco*). The benefits plan in that case provided that an employee was entitled to a pension if he satisfied certain enumerated requirements for eligibility. In a separate section entitled "Payment of Benefits", the *Conseco* plan required that, upon approval of an application, the individual would "become entitled to Pension Benefits under the Plan." *Conseco*, 93 F.3d at 604. The *Conseco* court found that the application was not a condition of eligibility under the plan because the application was not included in the criteria to be eligible for the benefits; the plan did not provide that the failure to submit an application would result in the retroactive loss of benefits for which the employee was entitled; and the application requirement was in a separate section of the plan which pertained to the payment of benefits, not the eligibility of benefits. *See Conseco*, 93 F.3d at 606-07; *see also Music v. Western Conference of Teamsters Pension Trust Fund*, 712 F.2d 413, 419 (9th Cir. 1983) (holding that, once a plan participant has satisfied all of the eligibility requirements for a disability pension, the participant has the right to receive a disability pension retroactive to the date at which it becomes vested - when the participant becomes disabled).

In the instant case, as in *Conseco*, the application requirement is not found in the eligibility section of the Plan. The application requirement is found in Part II, Article XI, Section 4 of the Plan,

8

entitled "Applications, Benefit Payments, Retirement And Benefit Suspensions". The eligibility requirements for the receipt of benefits for Total and Permanent Disability Benefits are found in Part II, Article VI of the Plan, entitled "Total and Permanent Disability Benefits". It is undisputed that Dudek met these eligibility requirements. It is a separate and distinct Article and Section of the Plan, Part II, Article XI, Section 4, that discusses payment of benefits and a requirement to apply for such benefits. Furthermore, as in *Conseco*, the Plan does not provide that the failure to submit an application will result in the retroactive loss of benefits for which the employee was entitled.

In support of his Motion for Summary Judgment, Dudek argues that the retroactive application of the Plan would further the intent of the Plan by conferring a benefit when grounds to receive the benefit have occurred. Conversely, if retroactive application did not occur, the Plan would be unjustly enriched.[1] Dudek fails to present any factual support for these arguments. In support of its Motion for Summary Judgment, Midwest argues that any retroactive application of the Plan benefits would fail to preserve the financial integrity of the Plan and fail to protect the benefits of all participants, not just Dudek. Midwest has provided the affidavit of an actuary to the Plan who states that if Part II, Article XI, Section 4(a) of the Plan was interpreted to allow all participants to obtain disability benefits retroactive to a time before the date their application was filed, the calculated levels would not be sufficient to pay those benefits. Other than this conclusory statement, Midwest does not provide any factual information to support its conclusion.

---

[1] In July 2003, the parties were given the opportunity to file additional facts in support of these arguments.

Based on the above, material questions of fact remain as to whether the denial of benefits was based on a reasonable interpretation of the Plan documents. Accordingly, summary judgment for both parties is denied.

Midwest argues that summary judgment should be entered on Dudek's claims for additional monthly benefits based on a retirement date prior to November 1, 1991, because Dudek failed to exhaust his administrative remedies for these claims prior to filing the instant lawsuit.

The court has discretion to require the exhaustion of administrative remedies to redress violations of ERISA. *See Gallegos v. Mount Sinai Medical Center*, 210 F.3d 803, 808 (7th Cir. 2000) (*Gallegos*). A plaintiff is excused from failing to pursue his administrative remedies where the administrative remedies are not available or pursuing those remedies would be futile. *See Gallegos*, 210 F.3d at 808.

The parties do not dispute that Dudek exhausted his administrative remedies as to his claim that the Plan incorrectly determined his eligibility date for Total and Permanent Disability Benefits. Based on this incorrect determination, Dudek seeks additional monies. Accordingly, the additional benefits that Dudek seeks is directly intertwined with the issue previously presented to the administrative bodies. Furthermore, the Review Panel's Decision on Reconsideration states, in pertinent part, that the issue before it was whether Dudek was entitled to Total and Permanent Disability Benefits and, if so, the effective date of the payments and the amounts payable. The amount of additional benefits properly payable based on the eligibility date was intertwined with the issue of the amounts payable to Dudek. Accordingly, Dudek has effectively exhausted his administrative remedies as to his claims for additional benefits based on a corrected eligibility date.

Accordingly, Midwest's Motion for Summary Judgment based on failure to exhaust administrative remedies is denied.

Dudek's Motion for Partial Summary Judgment must also be denied because a question of material fact exists as to when Dudek met the eligibility requirements of Part II, Article VI. Dudek asks the Court to infer that the Plan accepted the Department of Health and Human Services Social Security Office of Hearings and Appeals date of disability of September 6, 1985. However, this inference is not supported by the materials Dudek has submitted. Accordingly, Dudek's Motion for Partial Summary Judgment is also denied.

Lastly, both parties also seek summary judgment on the two other issues regarding additional monies sought by Dudek. In light of the above findings, both parties' Motions for Summary Judgment on these two issues is denied.

## CONCLUSION

For the foregoing reasons, Midwest's Motion for Summary Judgment is denied. Dudek's Motion for Partial Summary Judgment is also denied.

Dated: November 19, 2003

JOHN W. DARRAH
United States District Judge